**Llewellyn SHARP, IV**

v.

**James E. COURTIN.**

**Civ. A. No. 7432.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Sept. 10, 1959.

David C. Treen, Beard, Blue & Schmitt, New Orleans, La., for plaintiff.

James E. Courtin, in pro. per.

**BENJAMIN C. DAWKINS, Sr.,** District Judge.

This case presents the question of who shall stand the loss of a colt or young horse which was killed, accidentally, by its own activities in the pasture of the plaintiff after his price of $6,000 had been communicated to defendant by the latter's chosen representative, and by the parties through telephonic communication and found satisfactory.

The only dispute is one of fact; that is, did the defendant, as purchaser, attach to his acceptance the condition that he should first see moving pictures of the colt before the deal was closed? Admittedly the terms: Price—$6,000, $2,500 cash and balance, $3,500, in ninety days were satisfactory. It is also ad-

mitted defendant had never seen the animal, but requested associates or employees, while attending the Kentucky Derby in 1956, to find a colt or yearling sired by "Devil Diver" out of "Bill's Marge", and that these experienced horsemen found and reported to defendant such an animal for the price stated, which both recommended unconditionally be accepted. One of them took still pictures and sent them to defendant promptly, but had not developed the movies before the death.

No witness, other than defendant, ever testified that acceptance was conditioned upon or to be deferred until he could see these movies. On the stand he claimed this requirement was conveyed to plaintiff in one of two or more telephone conversations between the two during the time negotiations were in progress. The statement is flatly denied by plaintiff, who testified that the colt was killed on May 20th, and that the next day, the 21st, he informed defendant of that fact by telephone, which is also not disputed.

These further facts are not disputed: Plaintiff, several days before the death of the colt, had his attorney draft a bill of sale or contract reciting the price of $6,000, payable $2,500 cash, and the balance of $3,500 within 90 days and which also, at the request of defendant, did not stipulate for immediate delivery, but, in addition to the price on terms, provided:

> "The first party retains possession of said yearling and the *first* party is to pay to first party the sum of Eighty ($80.00) Dollars per month as board. Prior to the time said yearling is removed from custody and possession of first party second party agrees to pay the additional sum herein referred to in paragraph No. 2."

It is perfectly clear that the use of the word "first" the second time in line 2 of this quoted paragraph (3) of the agreement was an error and should have read "second" (party) for it makes no sense to say that "first party", plaintiff, is to pay himself $80 a month for boarding the colt he was selling to "second party" (defendant), and the Court is justified in reading it as intended, *second* party.

Plaintiff swore, at the trial, that when he informed defendant of the colt's death, the latter said he had covered the animal with insurance, not to worry and the balance would be paid in a few days. Defendant denied this and gave as his reason for stopping payment on the check the purchase was not complete, because the moving pictures had not been and never were received. He also denied making the statement about insurance, or that the balance would be paid.

After payment of the check was stopped, plaintiff, on June 19th, wrote Courtin and at the trial defendant offered in evidence, a letter reading as follows:

> "Mr. Jim Courtin
> "National Bank of Commerce Building
> "Suite 1124
> "New Orleans, Louisiana
> "Dear Mr. Courtin:
>
> "After I advised you by telephone on about the 21st day of May, 1956, that the colt I sold you had been killed, I have not heard from you. Mr. Shouse delivered to me your check for $2,500.00, which I deposited on about the 6th day of June 1956. This check was returned to me on the 14th day of June.
>
> "I feel that at the time this colt died he belonged to you. I could have cashed your check and not told you about the colt's death, but I felt that you should know, so I called you. I would like some answer from you as to what your feeling is about this loss.
>
> > "Sincerely yours,
> > "Lew Sharp."

So far as the Court recalls (no transcript of the trial evidence being included in the record sent to it at Monroe on June 26th, and, therefore, presumably, not having been written out) no reply was made to this letter by Courtin.

It is the Court's recollection that 10 days were allowed plaintiff for filing his brief, and a similar period of 10 days thereafter for reply. Plaintiff's brief was promptly filed, and none for defendant having been received on the 21st day of August, the case being reached for disposition, the Court wrote the Clerk, sending copies to both sides, inquiring if defendant's had been filed and was informed it would be sent on "in a few days." At this time, September 10th, no brief for defendant has been received.

Unless defendant has proven by a fair preponderance of the evidence the only disputed issue of fact, i. e., the condition stated earlier, that he would not be bound until he had seen and approved the moving pictures of the colt, his defense must fail whether the matter be decided under the law of either Kentucky or Louisiana. The sole proof on the point is the testimony of defendant on the trial, which is vigorously contradicted by plaintiff. The latter is supported by the written document or contract signed by defendant and returned to plaintiff May 18th, two days before the colt was killed, and, in doing so nothing was said about the alleged condition but, as stated earlier, express provision was made for plaintiff to "board" the colt for defendant at the price of $80 per month. In such circumstance, it is believed that, at best, defendant's sole testimony is offset by that of plaintiff, while the written contract, one copy of which plaintiff swore he had signed when the two were sent to and signed by defendant (one for each of the parties) in the presence of a witness, and the original mailed to plaintiff on the date stated.

The sale was, therefore, complete by the meeting of the minds of the seller and purchaser on all essential and expressed terms of the agreement. Sec. 361.190 Kentucky Revised Statutes, LSA–Civil Code, Article 2467.

Plaintiff should have judgment as prayed for. Proper decree may be presented.